**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

JOSE J. MAGANA GARCIA *et al.*,

*Plaintiff*,

*v.*

WEST MICHIGAN HOPYARDS LLC *et al.*,

*Defendants*.

**Case No. 1:24-CV-01179-PJG**

Hon. Phillip J. Green

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS, PRECLUSION, AND OTHER RELIEF (ECF NO. 71)**

**TABLE OF CONTENTS**

BACKGROUND ........ 1

LEGAL STANDARD ........ 7

ARGUMENT ........ 9

CONCLUSION ........ 16

## TABLE OF AUTHORITIES

### Cases

*Courser v. Mich. House of Representatives*,
404 F. Supp. 3d 1125 (W.D. Mich. Jul. 11, 2019) ........ 9, 13, 14

*Freeland v. Amigo*,
103 F.3d 1271 (6th Cir. 1997) ........ 8, 15

*Howe v. City of Akron*,
801 F.3d 718 (6th Cir. 2015) ........ 8

*Owens v. Meijer, Inc.*,
No. 24-CV-10732, 2025 U.S. Dist. LEXIS 266593
(E.D. Mich. Dec. 29, 2025) ........ 8, 14

*Spencer v. Fam. Health Ctr.*,
No. 20-CV-540, 2022 U.S. Dist. LEXIS 257314 (W.D. Mich. Dec. 21, 2022) ..... 8, 12

*Williams v. State Farm Fire & Cas. Co.*,
No. 17-CV-1147, 2019 U.S. Dist. LEXIS 197148
(W.D. Mich. Nov. 14, 2019) ........ 13

### Statutes

29 U.S.C. § 1801 ........ 1

29 U.S.C. § 201 ........ 1

M.C.L. § 408.931 ........ 1

### Rules

Fed. R. Civ. P. 26(e) ........ 9

Fed. R. Civ. P. 26(e)(1)(A) ........ 7, 11

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi) ........ 7

Fed. R. Civ. P. 37(c)(1) ........ 7

Fed. R. Civ. P. 37(c)(1)(C) ........ 7

Defendants, West Michigan Hopyards, LLC, Jason Jaekel, and Bryan Posthumus (collectively, "Defendants"), file this brief in opposition to Plaintiffs' Motion For Sanctions, Preclusion, and Other Relief (ECF No. 71), filed on October 29, 2026. For at least the reasons given herein, the Court should deny Plaintiffs' motion.

**BACKGROUND**

Plaintiff, Jose J. Magana Garcia, filed this action under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801 *et seq*., the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and the Michigan Improved Workforce Opportunity Wage Act, M.C.L. § 408.931 *et seq*., against Defendants, on November 6, 2024. (*See* ECF No. 1). On May 5, 2025, the Court entered a scheduling order pursuant to which Defendants served their initial disclosures on June 2, 2025. (*See* ECF No. 19; ECF No. 71-3). Defendants' initial disclosures identified third-party, Ben Gunter, as "an accountant for West Michigan Hopyards" with "information relating to hours worked and relevant documentation for Plaintiff Magana Garcia's time working with West Michigan Hopyards." (ECF No. 71-3 at PageID.845). On August 22, 2025, Defendants served responses to Plaintiffs' Requests for Production and Interrogatories. (*See* ECF No. 71-4; ECF No. 71-5). Shortly thereafter, Defendants also made a significant production of documents, including tax returns, Plaintiff Magana Garcia's Forms 1099, a list of every payment to Plaintiff Magana Garcia, generated through QuickBooks, and hundreds of text messages between Plaintiff Magana Garcia and Defendants Posthumus and Jaekel.

More than one year after Plaintiff Magana Garcia filed his complaint, on January 23, 2026, the parties stipulated to amendment of the complaint to join twelve

additional plaintiffs (collectively, "Plaintiffs"). (*See* ECF No. 32). The Court subsequently entered the stipulation and extended discovery to July 31, 2026. (*See* ECF No. 33). Plaintiffs filed their amended complaint on February 18, 2026. (*See* ECF No. 35). On March 25, 2026, Defendants filed an answer denying the salient allegations and asserting several affirmative defenses, including that Plaintiffs' claims under the FLSA and the AWPA are barred because "Defendants did not use more than 500 man-days of agricultural labor during any quarter of any year at issue in this suit," "[a]t all relevant times, Plaintiffs were independent contractors," and "Defendants are not joint employers of any Plaintiff, and there was no direct employment relationship between Defendants and any individual Plaintiff . . . ." (*See* ECF No. 38 at PageID.195-197).

On July 28, 2026, the parties stipulated "to extend the time for completion of discovery solely for the purpose of conducting depositions," "propose[d] September 11, 2026 as the deadline for completion of discovery," and noted that the basis for the stipulation was the parties' inability "to obtain depositions for all Plaintiffs and Defendants . . . due to the number of [p]arties involved and the conflicting schedules of the attorneys of record." (*See* ECF No. 41 at PageID.202). The Court entered the parties' stipulation on July 30, 2026, extending the deadline for depositions to September 11, 2026. (*See* ECF No. 42).

On September 6, 2026, before the extended deadline for party depositions, Defendants filed a motion to compel responses to written discovery, in light of the fact that Plaintiffs refused to produce a single document, as well as the depositions of all

thirteen Plaintiffs. (*See* ECF No. 47). On September 11, 2026, five days later, Plaintiffs moved to compel the depositions of Defendants. (*See* ECF No. 53). The Court conducted a hearing on September 24, 2026, and ultimately denied Defendants' motion in its entirety, but granted Plaintiffs' motion as to the depositions of Defendants. (*See* ECF No. 58). The Court further extended the deadline for dispositive motions to November 13, 2026. (*See id.* at PageID.731). On October 11, 2026, Defendants' filed a motion for reconsideration of the Court's September 24, 2026 order, which remains pending as of the date of this brief. (*See* ECF No. 63).

On October 12, 2026 and October 13, 2026, Plaintiffs took the depositions of Defendants. Defendant Jaekel testified that, although he recently replaced his old phone, he believed that "all of the data" from that phone "has been stored somewhere in the cloud." (*See* Harris Decl. at ¶ 3, Ex. 1 (Jaekel Tr. (Vol. 1) at 34:15-25)). Defendant Jaekel also testified that, although he believed that "in '19 or '21," years before this lawsuit was filed, he may have lost certain files as a result of damage to his phone, he is "not the most tech savvy person," and was unsure "how to access" all of his text messages. (*See id.* (Jaekel Tr. (Vol. 1) at 35:1-10)).

During the deposition of Defendant Posthumus, who also testified pursuant to Rule 30(b)(6) on behalf of Defendant West Michigan Hopyards, Defendant Posthumus testified that he did not delete any text messages "after the lawsuit," and although he "got new phones multiple times" over a "nine-year period of time," he "assume[s]" that all of his messages "transferred" to the new phones because at least "some transferred over." (*See id.* at ¶ 4, Ex. 2 (Posthumus Tr. (Vol. 1) at 203:7-21)). He also

reiterated that Mr. Gunter had the most information regarding such matters as "taxes," "tax forms," "ledgers," "withholdings," "quarterly reports," and "processing of [] payroll or checks." (*See id.* (Posthumus Tr. (Vol. 1) at 78:13-79:8)). During his deposition, Defendants also agreed, at Plaintiffs' request, to produce a litany of documents in addition to what had already been produced. (*See, e.g.*, *id.* (Posthumus Tr. (Vol. 1) at 56:7-8, 62:12-19, 75:9-17, 110:19-111:12, 192:12-14, 212:6-15, 214:8-12); *id.* at ¶ 5, Ex. 3 (Posthumous Tr. (Vol. 2) at 339:4-340:3)). Defendants further offered to "make the company's designee available for a continued session" of deposition at Plaintiffs' election. (*See id.* at ¶ 5, Ex. 3 (Posthumous Tr. (Vol. 2) at 339:22-25)).

Although Defendants identified Mr. Gunter in their initial disclosures on June 2, 2025, Plaintiffs never issued any subpoena to Mr. Gunter. (*See* ECF No. 71-3 at PageID.845). Nonetheless, on October 15, 2026, Defendants agreed to the deposition of Mr. Gunter, on or before November 1, 2026, and that Defendants would produce any documents reviewed by Mr. Gunter two business days before. (ECF No. 64 at PageID.786-787; *see also* ECF No. 65). On October 23, 2026, Defendants' produced the documents reviewed by Mr. Gunter, as well as the documents requested and agreed upon during the deposition of Defendant Posthumus. (*See* Harris Decl. at ¶ 6, Ex. 4 (Gunter Tr. (Vol. 2) at 7:14-21)). Mr. Gunter testified on October 27, 2026 as to "taxes, tax forms and tax filings, the general ledgers and their accuracy[,] withholdings and payroll reports, the processing of payroll and checks, and the bookkeeping, accounting, and QuickBook[s] records." (*See id.* (Gunter Tr. (Vol. 2) at 6:16-25)). His testimony confirmed that the documents were accessible "strictly" by

him, and that Defendants had "possibly" asked him for the documents earlier in this case, but that he could not recall. (*See id.* (Gunter Tr. (Vol. 2) at 14:12-16:5)). At the end of his deposition, and at Plaintiffs' request, Defendants agreed to produce still further documents located within Mr. Gunter's custody. (*See id.* (Gunter Tr. (Vol. 2) at 187:8-14)).

On October 28, 2026, once more at Plaintiffs' request, Defendants agreed to yet additional supplementation of their discovery responses, including supplemental responses to interrogatories, supplemental document production (including new species of documents that did not fit within Plaintiffs' original requests), and for any documents not located or not in existence, declarations by a person with knowledge stating the facts and describing the search made, including the persons, locations, and systems searched, by October 30, 2026 at 7:00 pm. (*See* ECF No. 70 at PageID.816)). The parties also stipulated to additional depositions for Defendants Posthumus and Jaekel, to take place on November 6, 2026, and Defendants agreed to "pay the court reporter's appearance fee and the cost of one certified transcript of the November 6, 2026 depositions." (*See id.* at PageID.816-817). Defendants ultimately produced the bulk of agreed-upon documents on October 31, 2026 at approximately 4:01 am, supplemental interrogatory responses on October 31, 2026 at approximately 11:57 pm, and the declarations of Defendants Posthumus and Jaekel, as well as their counsel, on November 5, 2026. (*See* Harris Decl. at ¶¶ 7-9, Exs. 5-7).[1]

[1] On November 5, 2026, Plaintiffs filed a second motion for sanctions and for an order to show cause why the Court should not hold Defendants in contempt for producing certain

The declarations of Defendants Posthumus and Jaekel, as well as their counsel, provide an extensive explanation of Defendants' efforts in discovery. (*See id.*).

The additional depositions of Defendants Posthumus and Jaekel proceeded on November 6, 2026. During his deposition, when asked why certain documents were not produced earlier, Defendant Posthumus explained that "[a]fter [his] original deposition in October – it became clear that while [Defendants] didn't have official records and timecards . . . [they] had to expand [their] view of what 'records' actually meant from the standpoint of what could lend credibility to the point that there's no possible way [Plaintiff Magana Garcia] and/or his crew had a combination of 500 man days in any given quarter." (*See id.* at ¶ 10, Ex. 8 (Posthumus Tr. (Vol. 3) at 390:3-25)). Defendant Posthumus also testified that Defendants "requested documents from [Mr. Gunter] over two years ago." (*See id.* (Posthumus Tr. (Vol. 3) at 417:11-20)). Further still, Defendant Posthumus testified that "from the span of October 13th, the date of [his] deposition and October 30th, 31st or whatever, there was a multitude of requests ranging various different categories, subjects that required a substantial and significant amount of research, digging, and education on [his] part to learn how to obtain additional documentation and additional records," and that "everything that [he] could possibly find to turn over [he] turned over." (*See id.* (Posthumus Tr. (Vol. 3) at 444:8-445:15)). Defendant Jaekel further testified during

documents approximately one day after the agreed-upon deadline, and for producing the declarations approximately six days after the agreed-upon deadline. This brief does not address that motion.

his deposition that, although he produced many of his text messages with Plaintiff Magana Garcia in 2025, he did not produce all of his text messages or Facebook messages earlier because he "didn't know how to do any of the digital forensics that occurred" later. (*See id.* at ¶ 11, Ex. 9 (Jaekel Tr. (Vol. 2) at 124:16-125:3)). He also testified that "[e]very phone that [he's] gotten [he has] tried – attempted to continuously transfer the information along the way." (*See id.* (Jaekel Tr. (Vol. 2) at 126:25-127:6)).

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 26(e), "[a] party who has made a disclosure under Rule 26(a)" or who has "responded to an interrogatory, request for production, or request for admission" must "supplement or correct its disclosure or response . . . ." Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) in turn provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The Court may also "impose other appropriate sanctions," such as "directing that . . . designated facts be taken as established for purposes of the action," "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," and "striking pleadings in whole or in part." Fed. R. Civ. P. 37(c)(1)(C); *see also* Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

In determining whether a late disclosure is "substantially justified" or "harmless" for purposes of determining whether sanctions are warranted, courts in

the Sixth Circuit consider (i) "the surprise to the party against whom the evidence would be offered," (ii) "the ability of the party to cure the surprise," (iii) "the extent to which allowing the evidence would disrupt the trial," (iv) "the importance of the evidence," and (v) "the non-disclosing party's explanation for its failure to disclose the evidence." *Spencer v. Fam. Health Ctr.*, No. 20-CV-540, 2022 U.S. Dist. LEXIS 257314, at *6 (W.D. Mich. Dec. 21, 2022) (citing *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015)). If the Court determines that sanctions are warranted, the Court must also determine which sanctions to award, which requires the Court to consider whether (i) the "party's failure to cooperate in discovery is due to willfulness, bad faith, or fault," (ii) "the adversary was prejudiced by the party's failure to cooperate in discovery," (iii) "the party [was] warned that failure to cooperate could lead to the sanction," and (iv) "whether less drastic sanctions were first imposed or considered." *Owens v. Meijer, Inc.*, No. 24-CV-10732, 2025 U.S. Dist. LEXIS 266593, at *9 (E.D. Mich. Dec. 29, 2025) (quoting *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997)).

Finally, under Rule 37(e), "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," the Court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice" or "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation" may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must

presume the information was unfavorable to the party," or "enter a default judgment." Fed. R. Civ. P. 26(e). "Rule 37(e)(2) sanctions are available to address the prejudicial effect of lost [electronically-stored information] only if the loss is shown to have been motivated by an intent to deprive another party of the information's use in litigation." *Courser v. Mich. House of Representatives*, 404 F. Supp. 3d 1125, 1155 (W.D. Mich. Jul. 11, 2019) (internal quotations omitted).

## ARGUMENT

The Court should deny Plaintiffs motion in its entirety. *First*, Defendants did not violate the Federal Rules, and even if they did, any deficiency was substantially justified or harmless, at least because any surprise to Plaintiffs was minimal and has been cured, allowing the evidence would not disrupt trial, the evidence is important to Defendants' defense, and Defendants reasonably explained the basis for any delay. *Second*, Plaintiffs have not shown that any relevant evidence was lost while Defendants were under a duty to preserve or that Defendants suffered prejudice, let alone that any loss was intended to deprive Plaintiffs of the use of information. *Third*, even if the Court were to find that some sanctions are warranted, the extraordinary sanctions Plaintiffs seek are not warranted at least because any violation was not willful, in bad faith, or with fault, any prejudice to Plaintiffs was minimal, Defendants were not warned of the possibility of such severe sanctions, and less drastic sanctions were not first imposed. For at least these reasons, Plaintiffs' motion should be denied.

Plaintiffs contend that "Defendants violated Rules 26(e), 26(g), and 30(b)(6)." (ECF No. 71-1 at PageID.833). Plaintiffs' argument is based, in part, on the assertion

that Defendants' original discovery responses "were incorrect when given" and "Defendants never corrected them." (*Id.* at PageID.834). But, the record does not support Plaintiffs' insinuation that Defendants did not conduct a "reasonable inquiry" prior to serving their original discovery responses or that Defendants did not correct their discovery responses. Quite the opposite, the record demonstrates that on June 2, 2025, Defendants identified their accountant, third-party Mr. Gunter, as having "information relating to hours worked and relevant documentation for Plaintiff Magana Garcia's time working with West Michigan Hopyards." (ECF No. 71-3 at PageID.845). Plaintiffs never issued a subpoena to Mr. Gunter. Nonetheless, Defendant Posthumus testified that Defendants "requested documents from [Mr. Gunter] over two years ago." (*See* Harris Decl. at ¶ 10, Ex. 8 (Posthumus Tr. (Vol. 3) at 417:11-20)). Thus, Defendants did, in fact, conduct a reasonable inquiry prior to serving their original discovery responses. Defendants should not be punished for failing to initially produce documents that Mr. Gunter himself testified were accessible "strictly" by him, particularly when Plaintiffs failed to issue a subpoena despite Defendants having identified Mr. Gunter in their initial disclosures. (*See* Harris decl. at ¶ 6, Ex. 4 (Gunter Tr. (Vol. 2) at 14:12-16:5); *see also* ECF No. 71-3 at PageID.845). That is especially true where, as here, Defendants agreed to Mr. Gunter's deposition and to produce any documents reviewed by Mr. Gunter two business days before the deposition. (*See* ECF No. 64 at PageID.786-787; *see also* ECF No. 65).

Defendants also explained the basis for their supplemental productions. Defendant Posthumus testified, for example, that "[a]fter [his] original deposition in October – it became clear that while [Defendants] didn't have official records and timecards . . . [they] had to expand [their] view of what 'records' actually meant . . . ." (*See* Harris Decl. at ¶ 10, Ex. 8 (Posthumus Tr. (Vol. 3) at 390:3-25)). Defendant Jaekel further testified that, at the time the original discovery responses were provided, he "didn't know how to do any of the digital forensics that occurred" later. (*See* Harris Decl. at ¶ 11, Ex. 9 (Jaekel Tr. (Vol. 2) at 124:16-125:3)). The fact that Defendants learned new information at a later date – and promptly supplemented their responses thereafter – does not demonstrate that they did not conduct a reasonable inquiry when responses were originally served. Rule 26(e) exists precisely because litigants often learn new information as litigation progresses, and it requires litigants to "supplement or correct [their] disclosure or response . . . if [they] learn[] that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e)(1)(A). That is exactly what Defendants did.

To the extent that Plaintiffs' motion is based on Rule 30(b)(6), the record utterly refutes any accusation that Defendants failed to appear for their deposition. Defendant Posthumus testified pursuant to Rule 30(b)(6) on October 12, 2026 and October 13, 2026, before Plaintiffs filed their motion, and again on November 6, 2026, after Plaintiffs filed their motion. (*See* Harris Decl. at ¶ 4, Ex. 2 (Posthumus Tr. (Vol. 1)); *id.* at ¶ 5, Ex. 3 (Posthumus Tr. (Vol. 2); *id.* at ¶ 10, Ex. 8 (Posthumus Tr. (Vol. 3)). Moreover, Mr. Gunter testified on October 27, 2026 as to "taxes, tax forms and

tax filings, the general ledgers and their accuracy[,] withholdings and payroll reports, the processing of payroll and checks, and the bookkeeping, accounting, and QuickBook[s] records." (*See* Harris Decl. at ¶ 6, Ex. 4 (Gunter Tr. (Vol. 2))). Sanctions are, therefore, simply unwarranted under Rule 37(d).

The same facts also demonstrate that, even if the Court found a discovery violation, any such violation is substantially justified or harmless. "[A]s to the surprise" to Plaintiffs, Plaintiffs were "on notice of the witnesses," including Mr. Gunter, since at least as early as June 2, 2025, when Defendants served their initial disclosures. *See Spencer*, 2022 U.S. Dist. LEXIS 257314, at *8. Plaintiffs were "free to depose or seek discovery from" Mr. Gunter, but "opted not to do so" until the very end of discovery, after Defendants agreed. *See id.* at *9. Additionally, all of the discovery Plaintiffs seek to exclude "track" Defendants' affirmative defenses, and supplement the testimony given by Defendants during their original depositions. *See id.* As such, "any surprise to [Plaintiffs] is minimal." *See id.* Moreover, "[a]ny prejudice to [Plaintiffs] is due in part to [their] own failure to depose or seek discovery from" Mr. Gunter, "of whom [Plaintiffs were] aware significantly in advance of the close of discovery." *See id.* at *9-10. In any event, Plaintiffs' "ability to cross-examine [the] witnesses at trial is not precluded in any way," and, in fact, Plaintiffs have already done so at depositions agreed to by Defendants and occurring after the documents at issue were produced.[2] *See id.* Nor would allowing the evidence disrupt

[2] It should be noted that Defendants asked Plaintiffs to agree to expand the discovery window beyond November 6, 2026, which would have given Plaintiffs more time to review Defendants'

trial – no trial date has been set in this matter. And, as set forth above, Defendants provided reasonable justifications for their supplemental productions. For all of these reasons, even if the Court finds a discovery violation, any such violation is substantially justified or harmless.

As to Plaintiffs' request for relief under Rule 37(e), Plaintiffs have failed to show that any relevant evidence was lost while Defendants were under a duty to preserve, let alone that any loss was intended to deprive Plaintiffs of the use of that evidence. *See Courser*, 404 F. Supp. 3d at 1155. In fact, Plaintiffs' motion offers little to no support at all for their request, beyond their assertion that "[t]his Court has found intent where a party replaced a phone after notice and did not disclose it." (ECF No. 71-1 at PageID.838 (citing *Williams v. State Farm Fire & Cas. Co.*, No. 17-CV-1147, 2019 U.S. Dist. LEXIS 197148 (W.D. Mich. Nov. 14, 2019)). But, the record demonstrates that Defendant Posthumus did not delete any text messages "after the lawsuit," and although he "got new phones multiple times" over a "nine-year period of time," including long before the lawsuit, all of his messages likely "transferred" to the new phones because at least "some transferred over." (*See* Harris Decl. at ¶ 4, Ex. 2 (Posthumus Tr. (Vol. 1) at 203:7-21)). Defendant Jaekel also testified that,

---

supplemental production prior to the additional depositions of Defendants Posthumus and Jaekel, and to extend the dispositive motions deadline. However, Plaintiffs steadfastly refused. (*See, e.g.*, ECF No. 79). In that regard, any prejudice to Plaintiffs is because of their refusal. Nonetheless, the Court could ultimately extend the dispositive motion deadline in light of Defendants' pending motions for reconsideration and for an extension (ECF Nos. 63, 78), which would cure any prejudice claimed by Plaintiffs.

although he recently replaced his old phone, he believed that "all of the data" from that phone "has been stored somewhere in the cloud." (*See* Harris Decl. at ¶ 3, Ex. 1 (Jaekel Tr. (Vol. 1) at 34:15-25)). Thus, Defendants have not shown that any relevant evidence was lost, let alone that any loss was intended to deprive Plaintiffs of the use of that evidence.[3] *See Courser*, 404 F. Supp. 3d at 1155. For similar reasons, Defendants have not shown prejudice. *See id.*

Finally, even if the Court determines that some sanctions are warranted, there can be little debate that the extreme sanctions Plaintiffs seek, including preclusion, striking Defendants' affirmative defenses, and taking facts as established, are not warranted. To be sure, courts in this district have found similar relief "too harsh" because they have the effect of dispositive relief. *Cf. Owens*, 2025 U.S. Dist. LEXIS 266593, at *23. That is especially true where, as here, any discovery failures were not due to willfulness, bad faith, or fault, Plaintiffs were not substantially prejudiced, Defendants were never warned of the extreme sanctions, and the Court never imposed less drastic sanctions for the conduct at issue. *See Owens*, 2025 U.S. Dist.

---

[3] To the extent that Plaintiffs' request under Rule 37(e) is based on Defendant Jaekel's testimony that "in '19 or '21," years before this lawsuit was filed, he lost certain files as a result of damage to his phone (Harris Decl. at ¶ 3, Ex. 1 (Jaekel Tr. (Vol. 1) at 35:1-10)), Plaintiffs' request is also meritless because Defendant Jaekel was not under a duty to preserve at that time. Similarly, Plaintiffs' reliance on "AWPA regulations" as purportedly "independently requir[ing] Defendants to keep hours records for three years" (ECF No. 71-1 at PageID.837), is without merit because, as asserted in Defendants' answer, "[a]t all relevant times, Plaintiffs were independent contractors and not employees of Defendants within the meaning of the FLSA, the AWPA, or the IWOWA." (*See* ECF No. 38 at PageID.196).

LEXIS 266593, at *21-24. The Sixth Circuit has long cautioned district courts against issuing sanctions that deprive a party of "their day in court," *Freeland v. Amigo*, 103 F.3d at 1277, and that is exactly what Plaintiffs are requesting. This Court should not allow it.[4]

In sum, Defendants did not violate the Federal Rules, and even if they did, any violation was substantially justified or harmless, at least because any surprise to Plaintiffs was minimal and has been cured, allowing the evidence would not disrupt trial, the evidence is important to Defendants' defense, and Defendants reasonably explained the basis for any delay. Plaintiffs have also failed to show that any relevant evidence was lost while Defendants were under a duty to preserve or that Defendants were prejudiced, let alone that any loss was intended to deprive Plaintiffs of the use of that information. And, even if the Court determines that some sanctions are warranted, the extraordinary sanctions that Plaintiffs request simply are not. Plaintiffs' motion should be denied.

---

[4] Nor should the Court order the expenses requested by Plaintiffs. (*See* ECF No. 71 at PageID.838-839). *First*, Defendants already agreed to "pay the court reporter's appearance fee and the cost of one certified transcript of the November 6, 2026 depositions." (*See* ECF No. 70 at PageID.816-817). *Second*, although Plaintiffs contend that "review of a production that should have preceded the depositions must now be done twice," (ECF No. 71 at PageID.839), this contention makes little sense. Regardless of when the production should have come, it came before the November 6, 2026 depositions, and Plaintiffs offer no explanation for why it warranted review twice. As this Court noted at the September 24, 2026 hearing, preparation for a deposition that ultimately goes forward is "not lost." (ECF No. 59 at PageID.750).

## CONCLUSION

For at least the reasons given herein, the Court should deny Plaintiffs' motion in its entirety.

Dated: November 12, 2026

Respectfully Submitted,

Michael James Harris

Michael J. Harris

*Of Counsel*

**SBS Law, PLC**

234 N Division Ave
Suite 400
Grand Rapids, MI 49503
Tel.: (203) 231-7490
Email: mharris@sbslawplc.com
michael.j.harris56@gmail.com

*Counsel for Defendants*

*West Michigan Hopyards, LLC, Jason Jaekel, and Bryan Posthumus*

**Certificate of Compliance Regarding Word Count**

Pursuant to Local Rule 7.3(b)(ii), the foregoing brief contains 4,300 words, including headings, footnotes, citations, and quotations, and not including the case caption, cover sheets, table of contents, table of authorities, signature block, attachments, exhibits, affidavits, or other addenda. The word count was generated using Microsoft Word for Mac Version 16.101.3.

Michael James Harris

Michael J. Harris